1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                       AT SEATTLE

10   MICHELLE DAWLEY HARRISON,

11              Plaintiff,                    CASE NO. 2:16-CV-01627-DWC

12       v.                                   ORDER ON PLAINTIFF'S
                                              COMPLAINT
13   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security
14   Administration,

15              Defendant.

16
         Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the
17
     denial of Plaintiff's application for Disability Insurance Benefits ("DIB"). The parties have
18
     consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R.
19
     Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a
20
     United States Magistrate Judge, Dkt. 7.
21
         After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")
22
     erred by failing to properly evaluate the medical opinion evidence. Therefore, this matter is
23
     reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.
24

## PROCEDURAL & FACTUAL HISTORY

On July 7, 2011, Plaintiff filed an application for DIB. *See* Dkt. 8, Administrative Record ("AR") 284. Plaintiff alleges she became disabled on June 8, 2011, due to fibromyalgia, chronic fatigue syndrome, neuropathy, and gastroesophageal reflux disease. *See* AR 284, 327. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 112, 125. A hearing was held before ALJ Verrell Dethloff on January 23, 2013, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 53.

On March 25, 2013, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 168. Plaintiff's request for review of the ALJ's decision was granted by the Appeals Council on August 26, 2014. AR 176. On remand, the Appeals Council instructed the ALJ to reevaluate the medical opinion evidence— specifically, to further develop the analysis of Plaintiff's examining psychologist, Theoore Becker, Ph.D. AR 177.

On remand, ALJ Glenn Meyers again found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 43. Plaintiff's second request for review was denied by the Appeals Council on September 22, 2016, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On October 18, 2016, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because: 1) the ALJ erred in evaluating the medical opinion evidence; 2) the ALJ erred by improperly discounting Plaintiff's testimony; 3) the ALJ improperly rejected the lay witness testimony; 4) the ALJ failed to meet his burden at Step Five of demonstrating there were

1  other jobs Plaintiff could perform at Step Five; and 5) evidence presented to the Appeals Council

2  but not included in the administrative record renders the ALJ's decision unsupported by

3  substantial evidence in the record as a whole. Dkt. 10, p. 1.

4  **STANDARD OF REVIEW**

5  Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

6  security benefits only if the ALJ's findings are based on legal error or not supported by

7  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8  Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

9  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

10  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

11  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

12  **DISCUSSION**

13  I.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

14      **A.  Standard**

15  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

16  opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

17  821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

18  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

19  examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

20  set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

21  *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). The ALJ

22  can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

23  clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

24

F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

**B.  Application of Standard**

1. *Glenn Goodwin, Ph.D.*

Dr. Goodwin conducted a two-day neuropsychological evaluation of Plaintiff from October 1 to October 2, 2012. AR 867. As part of his review, Dr. Goodwin conducted a clinical interview, medical records review, mental status examination, validity assessments such as the MMPI-2, WAIS-IV, and TOMM, and other mental health testing, including the WAIS-IV, BDI-II, and BAI. AR 848-64. On examination, Plaintiff presented as pleasant and cooperative, with a mildly depressed mood and affect. AR 856. Dr. Goodwin noted Plaintiff reported and exhibited signs of chronic pain. AR 858. Plaintiff demonstrated adequate effort and motivation, and was involved in the testing process. AR 857. Dr. Goodwin noted Plaintiff presented with generally adequate attention and concentration; however, Dr. Goodwin noted Plaintiff reported increasing difficulty concentrating as testing progressed. AR 857. Plaintiff's performance on the various measures fell between "average" or "below-average" to "severely impaired." AR 859-62.

Dr. Goodwin concluded "the interactive and synergistic effect of chronic pain and chronic fatigue appear to be the primary functional issues from a neuropsychological standpoint." AR 865. Citing Plaintiff's consistently below-average performance on measures of

attention, concentration, and processing speed, as well as her decrease in cognitive stamina and increase in fatigue over time, Dr. Godwin concluded:

> I do not believe [Plaintiff] is work tolerant from [a] neuropsychological standpoint. There is clear evidence of objective impairment on cognitive testing accompanied by observations made over the two-day process that revealed susceptibility to fatigue and interference from pain, which contributed to some decline in her cognitive stamina and endurance. Projecting this picture into a typical work week, with consecutive workdays, strongly suggests that she would not be able to maintain effective and efficient work performance on a reasonably continuous basis. Her continuing neuropsychological presentation is best understood as being multifactorial, with primary features of chronic pain, chronic fatigue, adverse effects of her current regimen of medications, and secondary adjustment difficulties with features of anxiety and depression.

> The findings from this neuropsychological study are generally consistent with the recent physical capacity examination. The issue here is not that she lacks the cognitive and emotional capacity for occupational performance, but rather would experience a diminishing level of continuing effectiveness in the level of occupational functioning that is required in any competitive employment setting on a day-in and day-out basis over a typical work week.

AR 866.

The ALJ gave Dr. Goodwin's opinion little weight for three reasons:

> [1] Of the claimant he stated that the evidence " . . . strongly suggests that she would not be able to maintain effective and efficient work performance on a reasonably continuous basis." [AR 862]. However, such a conclusion contains no specific vocational restrictions. It is essentially a finding that the claimant is "disabled" or "cannot work," which is not an opinion, but a legal conclusion reserved to the Commissioner.

> [2] Moreover, the opinion does not seem entirely consistent with Dr. Goodwin's own findings. For instance, even though the claimant reported feeling tired, and having cold-like symptoms and pain, Dr. Goodwin noted that her attention, concentration, persistence, and processing speed were good during the evaluation on both days. Even though she reported difficulty with word finding difficulties [sic], Dr. Goodwin found no observable difficulties in the claimant's reception, expression, or articulation. Dr. Goodwin also administered various tests, most of which reflected performance in the overall average range.

> [3] Furthermore, Dr. Goodwin based his opinion at least partially on the claimant's subjective report, indicating that he considered the claimant's "described history" in forming his opinion [AR 866]. However, as discussed

above, the claimant's report is generally not credible. Also, unlike Dr. Hellings' opinion, Dr. Goodwin's opinion is not consistent with the findings in overall [sic] medical record.

AR 40. Plaintiff argues these were not specific and legitimate reasons for discounting Dr. Goodwin's opinion, and the Court agrees.

First, the Ninth Circuit has held opinions of the type rendered by Dr. Goodwin do not constitute an opinion as to the ultimate issue of disability. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). In *Hill*, the ALJ failed to consider the opinion of an examining psychologist who opined a claimant's "combination of mental and medical problems makes *the likelihood of sustained full time competitive employment unlikely.*" *Id.* (emphasis in original). The Ninth Circuit found this was not a conclusion about the ultimate issue of disability as described in 20 C.F.R. § 404.1527(d)(1), but was "instead an assessment, based on objective medical evidence, of Hill's *likelihood* of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions." *Id.* (emphasis in original). Thus, the ALJ's failure to consider the examining psychologist's opinion in *Hill* was harmful error.

Here, similarly, Dr. Goodwin opined Plaintiff's neuropsychological symptoms, arising out of her physical and mental impairments, would likely prevent her from sustaining adequate pace and performance on a reasonably continuous basis for a forty-hour work week. AR 866. Dr. Goodwin based this opinion on objective medical evidence he obtained during his examination. While not couched in the precise vocational terminology typically used in Social Security evaluations, Dr. Goodwin's opinion is an opinion as to Plaintiff's ability to conduct work-related activities throughout a forty-hour work week. *See Hill*, 698 F.3d at 1160. Thus, the ALJ erred by discounting Dr. Goodwin's opinion as a conclusion on the ultimate issue of disability.

Second, the ALJ's conclusion that Dr. Goodwin's opinions were inconsistent with his objective findings is unsupported by substantial evidence. Plaintiff's performance on Dr. Goodwin's testing frequently revealed mild, moderate, and severe impairments. For example:

- Plaintiff was in the low average range for processing speed, block design testing, similarities testing, symbol span testing, controlled oral word association testing, and immediate memory index scores. AR 859-61.

- Plaintiff was in the borderline range for working memory, mental arithmetic reasoning, visual search and attention testing, auditory working memory index testing. AR 859-61.

- Plaintiff demonstrated mild to moderate impairments in: category testing, tactual performance testing, trail-making Test Part B, Seashore Rhythm testing, Stroop Neuropsychological Screening, Paced Auditory Serial Addition Testing, Boston Naming Testing, Continuous Visual Memory testing, and tests of special thinking. AR 859-62.

- Plaintiff demonstrated severe impairment in long delay word recognition and motor activity. AR 862.

Notably, many of these findings are consistent with Dr. Goodwin's opinion Plaintiff would have impaired attention and concentration on a sustained, continuous basis.

Third, the ALJ discounts Dr. Goodwin's opinion because it was based, in part, on Plaintiff's subjective statements. An ALJ may discount a physician's opinion where the opinion is based to a large extent on a claimant's self-reports, and the ALJ has properly discounted a claimant's subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ simply indicates he is discounting Dr. Goodwin's opinion because he "partially" relies on Plaintiff's subjective recounting of her medical history, however, the ALJ points to nothing to indicate Dr. Goodwin relied more heavily on Plaintiff's subjective reports than on the results of his physical examination. AR 40. Because

Dr. Goodwin did not rely more heavily on Plaintiff's subjective statements than his own clinical

observations and testing, the ALJ's reasoning is unsupported by substantial evidence.

Because the ALJ failed to articulate specific and legitimate reasons for discounting Dr.

Goodwin's opinion, the ALJ erred. Further, the ALJ's residual functional capacity evaluation

fails to account for the degree of impairment in Plaintiff's ability to sustain work activity for a

forty-hour work week as opined by Dr. Goodwin. AR 29. Thus, the ALJ's errors are not

"inconsequential to the ultimate nondisability determination" and are harmful errors requiring

remand for further proceedings. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

2. *Theodore Becker, Ph.D.*

Dr. Becker conducted a two-day examination of Plaintiff from August 20 to August 21,

2012, for a performance-based physical capacity evaluation arising out of her disability claim

with her workplace insurer. AR 818. As part of this examination, Dr. Becker evaluated Plaintiff's

biomechanical performance on various physical capacities tests. AR 823-45. Dr. Becker noted

Plaintiff's performance on various physiological measures of pace and physical activity

demonstrated performance well below average. For instance, Plaintiff demonstrated a higher

than expected heart rate during testing and an inability to maintain the required pace for testing.

AR 843-45. Dr. Becker also documented significant swelling in Plaintiff's hands, slowed

performance over time in Plaintiff's fine motor skills, reduced range of motion in Plaintiff's

shoulders, as well as reduced range of motion in her cervical and lumbar spine. AR 841-42, 826-

29. Based on these findings, Dr. Becker opined "the examinee should be considered work

intolerant. The physiological response shows that competitive and predictable sustained work is

absent for all levels of category according to the Dictionary of Occupational Titles. There is also

a significant finding of distal limb swelling over time." AR 845.

After rendering his opinion, Dr. Becker reviewed a surveillance video obtained by Plaintiff's workplace insurer, showing Plaintiff engaging in several activities of daily living. AR 965. Upon review of the video, Dr. Becker rendered a supplement to his original opinion. AR 965. In his supplemental opinion, Dr. Becker indicated the surveillance video did not change his original analysis for several reasons. Dr. Becker first notes the video contains several jump cuts and edits, which resulted in recordings of only 6 hours and 15 minutes out of a 24 hour day. AR 965. Dr. Becker also noted that, while the video shows Plaintiff engaging in certain activities such as going to a coffee shop, shopping at a store, or walking on a treadmill, the video does not show Plaintiff engaged in these activities on a continuous basis. AR 965. Specifically, Dr. Becker noted Plaintiff's attempts to use a treadmill were "discontinuous," and evinced "a significant decrease in the ambulatory biomechanical efficiency which reflects significant physiological fatigue. In lay terms she is going slower as time progresses." AR 966. Thus, Dr. Becker found the surveillance video corroborated his opinion.

The ALJ gave Dr. Becker's opinion little weight for four reasons:

[1] [Dr. Becker's] conclusion contains no specific vocational restrictions. Such lack of specificity is surprising in light of expertise and extensive data analysis purported by Dr. Becker. Moreover, Dr. Becker's conclusion is essentially a finding that the claimant is "disabled" or "cannot work," which is not an opinion, but a legal conclusion that is reserved to the Commissioner (20 C.F.R. 404.1527 (e)(1), 416.927(e)(1) [sic][1]).

[2] Additionally, Dr. Becker's opinion is not consistent with the overall record. He predicates his opinion on findings regarding the claimant's heart rate during gait testing. Specifically, he found that the claimant had an elevated heart rate during the testing and that hear heart rate took longer than normal to [sic] a resting rate. Using statistical analysis, he concluded that such findings indicated that the claimant demonstrated "fatigue dysfunction" and that she "is not capable

[1] It appears the ALJ meant to refer to 20 C.F.R. § 404.1527(d)(1) and 20 C.F.R. § 416.927(d)(1).

of sustained, competitive, and predictable tolerance for work tasks according to the dictionary of occupational titles." [AR 818-47].

However, while his finding might indicate some level of restriction, his conclusions are not consistent with the longitudinal medical record, which, as discussed above, shows few objective findings consistent with the claimant's report of fatigue and other symptoms. I find that the longitudinal medical record, which includes extensive notes from early 2011 through early 2015, as discussed above, is more representative of the claimant's function than Dr. Becker's evaluation, which reflects only a snapshot of the claimant's abilities.

[3] Dr. Becker's opinion is also not consistent with the claimant's presentation in the insurance company surveillance video. Dr. Becker asserts that the video does not change his opinion and that the video does [sic] is not inconsistent with disabling restrictions [AR 965-66]. However, I do not his [sic] explanation convincing. Rather, in light of evidence of symptom exaggeration, the claimant's inconsistent statements, and the lack of objective findings in the treatment record, I find that the video reflects functionality far greater than that alleged by the claimant or indicated by Dr. Becker.

[4] Dr. Becker also seems to indicate limitations based on his findings of hand swelling in the claimant [AR 818-47]. However, I give this opinion no weight because he does not indicate any specific manipulative restrictions and his testing show [sic] no manipulative limitations.

AR 38-39.

First, as with Dr. Goodwin's opinion, Dr. Becker's opinion is not simply a conclusory opinion on the ultimate issue of disability. Based on his clinical findings and testing, Dr. Becker concluded Plaintiff would be unable to maintain a pace required for sustained, competitive, and predictable tolerance for work related tasks. AR 845. Rather than simply opining Plaintiff was disabled, Dr. Becker compared his observations of Plaintiff's pace and endurance on physical tasks with the requirements of a forty-hour work week, and found Plaintiff would not meet those requirements. This was a valid opinion on Plaintiff's functional limitations that the ALJ could not disregard as an issue reserved to the Commissioner. *Hill*, 698 F.3d at 1160.

Second, the ALJ found Dr. Becker's opinion was inconsistent with the longitudinal medical record. However, the ALJ fails to explain what about the longitudinal record was

1   inconsistent with Dr. Becker's opinion. An ALJ must do more than state his or her conclusions;

2   he must "set forth his own interpretations and explain why they, rather than the doctors' are

3   correct." *Reddick*, 157 F.3 at 725.  Notably, Dr. Becker's opinion and associated clinical findings

4   suggest Plaintiff's performance of physical activities will degrade *over time*. By contrast, the

5   medical records cited by the ALJ earlier in the decision do not speak to Plaintiff's limitations in

6   persistence, pace, and sustained physical effort. AR 31-37. Further, the ALJ's discussion of these

7   records appears selective. For instance, while the ALJ discusses Dr. Goodwin's test results from

8   her neuropsychological examination, he largely fails to discuss Dr. Goodwin's findings of mild,

9   moderate, and severely impaired performance. *Compare* AR 34 *with* AR 859-62. Thus, it is not

10  apparent from the ALJ's opinion which records would actually contradict Dr. Becker's findings.

11          Third, the ALJ discounts Dr. Becker's findings due to purported inconsistencies with a

12  surveillance video. Notably, Dr. Becker reviewed the video footage and explained, in detail, why

13  the surveillance video corroborated his opinion. AR 965-66. By contrast, the ALJ relied upon a

14  written report from Plaintiff's workplace disability insurer which described the contents of the

15  surveillance video. AR 464. Dr. Becker's interpretation of the video is markedly different than

16  the interpretation articulated in the insurance report. *Compare* AR 464 (describing Plaintiff's use

17  of the treadmill as "perform[ed] . . . in a fluid, consistent manner without any noticeable

18  difficulty") *with* AR 965-66 (describing Plaintiff's use of the treadmill as discontinuous, and

19  noting Plaintiff's performance degraded over time). The surveillance video itself, however, is not

20  included in the record, and there is nothing to suggest the ALJ actually viewed the video. At

21  bottom, Dr. Becker and the insurance report have propounded different interpretations of the

22  contents of the video. While the ALJ offers several conclusory reasons for giving weight to the

23  insurance report's interpretation of the video, the ALJ has offered no reason for elevating the

24

insurance report over Dr. Becker's clinical observations and interpretations. *Reddick*, 157 F.3 at 725 (noting an ALJ must explain why his interpretation, rather than the doctors, is correct).

Further, to the extent the ALJ discounts Dr. Becker's opinion due to apparent reliance on Plaintiff's subjective statements, the ALJ erred. An ALJ may not reject an examining physician's opinion by questioning the credibility of a claimant's complaints "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Commissioner, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (*citing Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001))(suggesting such an approach is neither a clear and convincing reason nor a specific and legitimate reason). Importantly, there is no indication in the record Dr. Becker relied *more heavily* on Plaintiff's subjective statements than on his own objective testing and clinical observations. *Ghanim*, 763 F.3d. at 1162. Thus, the ALJ's third reason for discounting Dr. Becker's report is neither a specific and legitimate reason, nor is it supported by substantial evidence.

Finally, the ALJ discounts Dr. Becker's opinion Plaintiff may have limitations arising out of her hand swelling by noting Dr. Becker does not opine to any specific manipulative limitations, nor did he observe any manipulative difficulties during his testing. AR 846. Dr. Becker's report does indicate Plaintiff had normal grip strength and range of motion in her wrists. AR 824-25, 832-33. However, Dr. Becker also documents deficiencies in Plaintiff's fine motor skills, such as typing speed and accuracy, which he attributes to fatigue dysfunction. AR 840-41. The ALJ makes no reference to this finding, which would appear to suggest Dr. Becker did, in fact, identify manipulative limitations. In light of the ALJ's other errors in discounting the balance of Dr. Becker's opinions, discussed above, the ALJ should also reconsider Dr. Becker's opinions concerning Plaintiff's hand swelling  and any associated limitations on remand.

### 3. *Gina Cadena-Forney, M.D.*

Dr. Cadena-Forney treated Plaintiff's fibromyalgia and chronic fatigue syndrome beginning in 2008 and continuing through November, 2012, shortly before the Plaintiff's first ALJ hearing. AR 1124. Though Dr. Cadena-Forney initially treated Plaintiff for general primary care, Dr. Cadena-Forney increasingly focused her treatment on Plaintiff's arm pain, joint pain, back pain, and neck pain. AR 1124. Throughout her treatment, Dr. Cadena-Forney conducted physical examinations, in which she documented positive findings of fatigue, myalgia, back pain, joint swelling, and arthralgias, as well as edema and hand tenderness. AR 1131, 1147, 1364, 1366, 1369. Dr. Cadena-Forney diagnosed Plaintiff with Fibromyalgia, Chronic Fatigue Syndrome, Depression, Anxiety, and PTSD. AR 1125. As a result of these impairments, Dr. Cadena-Forney opined Plaintiff would be limited in her ability to lift, carry, reach, sit, and stand. AR 1394. Dr. Cadena-Forney further opined Plaintiff would have difficulty with "keeping concentration and was easily stressed." AR 1394. Dr. Cadena-Forney also reported she reviewed the opinions and evaluations of Dr. Becker's and Dr. Goodwin. AR 1126. Dr. Cadena-Forney concluded both Dr. Becker and Dr. Goodwin's opinions are consistent with her own observations and treatment of Plaintiff. AR 1126.

The ALJ gave little weight to Dr. Cadena-Forney's opinion for three reasons:

[1] She essentially adopted the opinions of Dr. Goodwin and Dr. Becker. Although treating provider opinions are usually afforded more weight, I give little weight to her opinion for the reasons discussed above regarding the opinions of Dr. Goodwin and Becker.

[2] Dr. Cadena-Forney also concluded that the claimant was "disabled" from fibromyalgia and chronic fatigue syndrome due to "limitations in lifting, carrying, reaching, sitting, and standing. She also has difficulty with keeping concentration and is easily stressed." [AR 1394; see AR 1364]. This conclusion is essentially a finding that the claimant is "disabled" or "cannot work," which is a legal conclusion that is reserved to the Commissioner. [3] Moreover, Dr. Cadena-Forney did not provide a completed evaluation with objective findings consistent

with such limitations. Nor do her treatment notes or the record in general, as discussed above, contain objective evidence consistent with her opinion.

AR 40. Plaintiff argues these were not specific and legitimate reasons for the ALJ to discount Dr. Cadena-Forney's opinion, and the Court agrees.

First, Dr. Cadena-Forney did more than "essentially adopt" the opinions of Dr. Goodwin and Dr. Becker. Dr. Cadena-Forney identified aspects of Dr. Goodwin and Dr. Becker's opinions with which she agreed, and, critically, explained she agreed with them *because* they were consistent with her own observations throughout Plaintiff's course of treatment. AR 1126. For example, Dr. Cadena-Forney noted Dr. Goodwin's opinion as to Plaintiff's diminishing capacity for concentration due to fibromyalgia-related fatigue was consistent with her own observations of Plaintiff's variable presentation on examination and observed declines in stamina. AR 1126. Rather than uncritically adopt Dr. Goodwin and Dr. Becker's opinions as her own, Dr. Cadena-Forney explained why she felt her own opinions of Plaintiff's health were consistent with those opined to by other physicians.[2]

Second, Dr. Cadena-Forney's opinion was not a conclusory opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 505.1527(e). Dr. Cadena-Forney opined to functional limitations in Plaintiff's ability to lift, carry, reach, sit, stand, and maintain concentration. AR 1394. Rather than a conclusory opinion as to the ultimate issue of disability, these are opinions about specific functional limitations which the ALJ could not disregard out of hand. *See Hill,* 698 F.3d at 1160.

Finally, the ALJ's conclusion that Dr. Cadena-Forney's treatment notes do not provide objective support for her opinions is both legally erroneous and unsupported by substantial

---

[2] In any event, as discussed above, the ALJ erred by improperly discounting Dr. Goodwin and Dr. Becker's opinions.

evidence. As the Ninth Circuit has repeatedly stated, fibromyalgia is notable for its general absence of objective symptoms. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Further, Dr. Cadena-Forney's treatment notes do, in fact, document observations and clinical findings which corroborate her opinion. *See* AR 1131, 1147, 1364, 1366, 1369. These recurring findings of fatigue, back pain, myalgia, and hand swelling in Dr. Cadena-Forney's treatment notes corroborate her opinions as to Plaintiff's limitations in reaching, carrying, sitting, standing and lifting. Thus, the ALJ's conclusion that Dr. Cadena-Forney's opinion was unsupported by the treatment notes is a conclusion unsupported by the record. *See Garrison v. Colvin*, 759 F.3d 996, 1014, n. 17 (9th Cir. 2014).

### 4. *Marc Redmon, Psy.D.*

Dr. Redmon was Plaintiff's treating psychologist for her depression, panic disorder, generalized anxiety, and post-traumatic stress disorder ("PTSD"). AR 807, 1079, 1123. On March 13, 2012, Dr. Redmon opined that on a majority of days, Plaintiff suffers from chronic pain and fatigue, poor attention and concentration, and variable mood. AR 807. As a result of her conditions, Dr. Redmon opined Plaintiff would be unable to perform with the "consistency and reliability necessary to sustain employment in any occupational setting." AR 807. Subsequently, on June 25, 2012, Dr. Redmon indicated Plaintiff would likely be unable to complete shifts or show up for work "if she is experiencing severe panic attacks or is unable to get out of bed due to depression." AR 1079. Dr. Redmon also indicated he believed Plaintiff would have a number of absences from work as a result of her symptoms. AR 1079.

The ALJ gave little weight to Dr. Redmon's opinion for three reasons:

[1] [A]s noted above for other providers, Dr. Redmon provided no specific vocational restrictions, and essentially concluded that the claimant was 'disabled.' This it [sic] is a legal conclusion that is reserved to the Commissioner.

1      [2] Moreover, Dr. Redmon's opinion is inconsistent with the overall medical
record, as discussed above, which shows little evidence [of] significant problems
2  regarding social or cognitive function. [AR 564-78, 585-704, 931-44, 1282-1311,
1341-85]. [3] Dr. Redmon also based his opinion at least partially on the
3  claimant's subjective report. He indicated that "I am not aware of any job in
which she could maintain employment given the likely number of absences . . . as
4  a result of her physical and psychological symptoms." [AR 1079]. However, for
the reasons discussed in this decision, the claimant's report of physical symptoms
5  is generally not credible.

6  AR 40.

7      Here, the ALJ essentially repeats the same errors he committed in evaluating Dr.

8  Goodwin, Dr. Becker, and Dr. Cadena-Forney's opinions. As with Dr. Becker and Dr.

9  Goodwin's opinions, Dr. Redmon's opinion Plaintiff is unlikely to be able to persist throughout a

10  forty-hour work week, and would have a large number of absences, is not an opinion on the

11  ultimate issue of disability. *Hill*, 698 F.3d at 1160. Further, the ALJ cites generally to 224 pages

12  of medical records to suggest there is "little evidence [of] significant problems regarding social

13  or cognitive function." AR 40. However, the ALJ provides no explanation as to how these

14  medical records actually contradict Dr. Redmon's opinion. The ALJ's failure to articulate his

15  reasoning with specificity was error. *See Reddick*, 157 F.3 at 725.

16      Finally, the ALJ discounts Dr. Redmon's opinion because it appears to be based "at least

17  partially" on Plaintiff's subjective statements. AR 40. This is not the correct standard for

18  discounting a physician's opinion. *See Ghanim*, 763 F.3d. at 1162 ("when an opinion is not more

19  heavily based on a patient's self-reports than on clinical observations, there is no evidentiary

20  basis for rejecting the opinion."). But, a review of Dr. Redmon's treating notes confirms Dr.

21  Redmon largely documented Plaintiff's self-reports, without providing independent clinical

22

23

24

observations or objective testing. AR 1071-1123.[3] Thus, were the ALJ to apply the correct legal

standard, this may be a specific and legitimate reason to discount Dr. Redmon's opinions.

Nonetheless, as the ALJ's errors in evaluating Dr. Goodwin, Dr. Becker, and Dr. Cadena-

Forney's opinions require remand, the ALJ should reevaluate Dr. Redmon's opinion on remand

as well.

### 5. *Donald Uslan, M.A., M.B.A, C.R.C.*

Mr. Uslan, a rehabilitation specialist, evaluated Plaintiff and conducted a record review

as part of a vocational rehabilitation and psychological evaluation on August 12, 2013. AR 1200.

Upon completion of his evaluation, Mr. Uslan prepared an eighty-two page report summarizing

his findings. AR 1200-1281. Mr. Uslan opined Plaintiff would have marked restrictions in her

activities of daily living, marked difficulties in maintaining social functioning, constant

deficiencies of concentration, persistence or pace, and continual episodes of deterioration or

decompensation in work or work-like settings. AR 1204, 1270. Mr. Uslan further opined

Plaintiff would be "able to engage in only limited stress situations and engage in only limited

interpersonal relations" as a result of her psychological impairments, and also found Plaintiff

would be limited to sedentary work. AR 1271. On a residual functional capacity assessment, Mr.

Uslan indicated Plaintiff would have marked limitations in her ability to: understand, remember,

and carry out detailed instructions; maintain concentration and attention for extended periods;

perform activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances;  sustain ordinary routine without special supervision; work in coordination

to or proximity with others without being distracted by them; make simple work-related

decisions; complete a normal workday and workweek without interruption from symptoms and

[3] Dr. Redmon's records are duplicated at AR 758-810.

1  to perform at a consistent pace without an unreasonable number and length of rest periods;

2  accept instructions and respond appropriately to criticism from supervisors; be aware of normal

3  hazards and take appropriate precautions; and set realistic goals or make plans independently of

4  others. AR 1272.

5        The ALJ gave Mr. Uslan's opinion little weight for two reasons. First, the ALJ concluded

6  "like most other treating and examining sources, [Mr. Uslan] failed to articulate specific

7  vocational restrictions; he indicated only that the claimant "cannot work," and is "totally and

8  permanently disabled." AR 41, 1205. This finding is flatly contradicted by Mr. Uslan's report.

9  As described above, Mr. Uslan provided a comprehensive, eighty-two page report which

10 included a list of concrete, vocational restrictions in a residual functional capacity finding. AR

11 1271-72. These are precisely the sort of vocational restrictions the Social Security

12 Administration considers when evaluating a claimant's residual functional capacity.

13       The ALJ also discounted Mr. Uslan's opinion because "for the reasons discussed above,

14 the opinion of Mr. Uslan is not consistent with the longitudinal medical record." AR 41.

15 However, the ALJ fails to explain what, exactly, about Mr. Uslan's opinion contradicts the

16 longitudinal record. *See Reddick*, 157 F.3 at 725. Given the ALJ appears to have ignored Mr.

17 Uslan's residual functional capacity findings in the written decision, it is hard to envision how

18 the ALJ could even come to the conclusion Mr. Uslan's opinion was inconsistent with the

19 longitudinal medical record.  Further, as noted in the discussion of Dr. Becker's opinion, above,

20 the ALJ's analysis of the medical records does not address Plaintiff's ability to persist in work

21 tasks for a forty-hour work week. Thus, the ALJ has failed to offer germane reasons to discount

22 the opinion of Mr. Uslan. On remand, the ALJ should reconsider Mr. Uslan's opinion.

23

24

II.    Other Assignments of Error

   **A.  Whether the ALJ Provided Specific, Clear, and Convincing Reasons,
        Supported by Substantial Evidence, for Discounting Plaintiff's Subjective
        Symptom Testimony.**

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's credibility can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair*, 885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan* , 242 F.3d at 1148.

Here, the ALJ discounted Plaintiff's testimony, in part, because of inconsistencies in her reporting of symptoms to providers. For example, the ALJ noted Plaintiff testified she required

the use of a cane and walker to ambulate, and appeared with a cane and walker when interviewed by an insurance company investigator. AR 395, 465. However, the ALJ noted Plaintiff did not present with a cane or walker to visits with Dr. Cadena-Forney, did not testify to the use of a cane or walker at her administrative hearing, and a report from a surveillance video did not document Plaintiff using a cane or walker to ambulate. AR 36-37, 79-111, 464. The ALJ also noted Plaintiff reported she requires help from her husband to bathe and rise from a seated position, but reported to Dr. Becker that she was independent in personal care. AR 823. An ALJ may properly consider inconsistencies in a claimant's testimony regarding his or her symptoms when evaluating the weight to give to such testimony. *See Smolen*, 80 F.3d at 1284.

However, as discussed above, the ALJ erred in evaluating the medical opinion evidence in the record, and an evaluation of a claimant's testimony relies, in part, on an accurate assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Thus, the ALJ's evaluation of Plaintiff's testimony is unsupported by substantial evidence in the record as a whole, and, on remand, the ALJ should reevaluate Plaintiff's testimony.

### B. Whether the ALJ Provided Germane Reasons for Rejecting the Lay Witness Evidence in the Record

In the Ninth Circuit, lay witness testimony is competent evidence and "cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1413(d), SSR 06-03p, 2006 WL 2329939 at *2. However, an ALJ may discredit a lay witness' testimony with specific reasons "germane to each witness." *Bruce,* 557 F.3d at 1115; *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010). Further, an ALJ need not discuss every witness' testimony on an individualized basis; if the ALJ provides germane reasons for discounting one witness' testimony then the ALJ may point to that reasoning for rejecting similar testimony of

1 another witness. *Molina*, 674 F.3d at 1114 (*citing Valentine v. Commissioner, Soc. Sec. Admin.*,

2 574 F.3d 685, 694 (9th Cir. 2009)).

3    Here, the ALJ discounted all lay witness evidence in the record as they "reflect the same

4 allegations made by the claimant, allegations that are generally not credible for the reasons

5 discussed above." AR 40. An ALJ may properly discount lay witness testimony when the lay

6 witnesses testify to essentially the same limitations as a claimant, and the ALJ had provided valid

7 reasons for discounting the claimant's testimony. *See Valentine*, 574 F.3d at 694. [4] However, as

8 the ALJ's error in evaluating the medical opinion evidence requires remand for further

9 proceedings, the ALJ should reevaluate the lay witness testimony on remand.

10            **C.  Whether the ALJ Erred at Step Five**

11    Plaintiff argues the ALJ erred at Step Five by improperly finding Plaintiff could perform

12 the job of "assembler," DOT # 734.687-018. However, as discussed above, the ALJ erred in

13 evaluating the medical opinion evidence. An ALJ's failure to properly evaluate all of the medical

14 opinion evidence may result in a flawed RFC finding. *See* SSR 96-8-p, 1996 WL 374184 at *2.

15 As the ALJ failed to properly evaluate the medical opinion evidence the ALJ will necessarily

16 have to re-evaluate Plaintiff's RFC on remand, and proceed on to Steps Four and Five, as

17 appropriate. Thus, the Court need not address Plaintiff's Step Five argument at this time.

18

19

20

21 ───────────────

22    [4] While this may be true, the ALJ's discussion of the lay witness testimony is remarkably
conclusory. The ALJ condenses his discussion of nine separate lay witnesses into two sentences,
23 without identifying what any of these individual lay witnesses actually testified to. *See* AR 41,
405-12, 448-60. This lack of explanation frustrates the Court's ability to perform "meaningful
24 judicial review." *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

1

       **D.  Whether the New Evidence Submitted to but Not Considered by the Appeals Council Warrants Remand**

2

3         Plaintiff argues evidence submitted to the Appeals Council, but not included in the administrative record, renders the ALJ's opinion unsupported by substantial evidence. As the

4

case is being remanded in any event, the ALJ should consider Plaintiff's additional evidence on

5

remand.

6

       **E.  Whether the Case Should be Remanded for An Award of Benefits, Rather than Further Proceedings**

7

8         Plaintiff requests a remand for the immediate payment of benefits. However, Plaintiff

9  makes no meaningful argument as to why she is entitled to such relief. Generally, when the

10  Social Security Administration does not determine a claimant's application properly, "the proper

11  course, except in rare circumstances, is to remand to the agency for additional investigation or

12  explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). While

13  the Court may remand for an award of benefits under certain circumstances, those circumstances

14  are not presented here. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court

15  notes significant questions concerning the reliability of Plaintiff's subjective symptom testimony

16  remain, and while the additional medical evidence submitted by Plaintiff may bolster her

17  arguments for benefits, it by no means renders the question beyond debate. In this case, these

18  questions are properly resolved by the Commissioner on remand.

19                           **CONCLUSION**

20         Based on the foregoing reasons, the Court finds the ALJ erred by failing to properly

21  evaluate the medical opinion evidence. Therefore, the Court orders this matter be reversed and

22  remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should

23  reevaluate the medical opinion evidence, reevaluate Plaintiff's subjective symptom testimony,

24

re-evaluate Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 14th day of April, 2017.

David W. Christel
United States Magistrate Judge